ORIGINAL

REISSUED FOR PUBLICATION
27 MAR 2017
OSM
U.S. COURT OF FEDERAL CLAIMS

FILED
FEB 27 2017
OSM
U.S. COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims

OFFICE OF SPECIAL MASTERS
No. 15-277V
Filed: February 27, 2017
Not to be Published

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| MORGAN DAVIS, | |
| Petitioner, | |
| v. | Human papillomavirus ("HPV") vaccine ("Gardasil"); Hepatitis A vaccine; Menactra vaccine; pseudo-tumor cerebri; no expert in support; motion to dismiss granted. |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Raquel Davis, Ronan, MT, for petitioner *pro se*.
Alexis B. Babcock, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION[1]

On March 18, 2015, petitioner filed a petition through her mother Raquel because, at that time, petitioner was a minor. On January 14, 2016, the undersigned issued an order changing the caption to reflect that petitioner had reached her majority. Petitioner alleges under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), that human papillomavirus ("HPV") vaccine ("Gardasil"), hepatitis A vaccine, and Menactra administered on April 10, 2012 caused her intracranial pressure (pseudo-tumor cerebri), papilledema, and headaches.

On February 4, 2016, petitioner's counsel moved to withdraw as attorney, having unsuccessfully searched for an expert to support petitioner's allegations for 15 months. On

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

February 5, 2016, the undersigned granted the motion to withdraw. Petitioner's mother represented petitioner under CFC Rule 83.1(a)(3). Petitioner was unable to obtain the services of another attorney. Attorney William Rossbach did attempt to find an expert to support petitioner's allegations, but, when he could not find one, he refused to represent petitioner.

On October 19, 2016, the undersigned held a telephonic status conference with petitioner, her mother, and respondent's counsel during which petitioner's mother said she could not get a doctor to support petitioner's allegations. Petitioner saw a neurologist every six weeks. She spoke to her current neurologist who would not give her a letter supporting her allegations. Petitioner and her mother contacted petitioner's original doctor and he refused to support petitioner's case. Petitioner's mother wanted time to decide whether or not to dismiss.

On February 7, 2017, the undersigned issued an Order to Show Cause why this case should not be dismissed by February 24, 2017. The undersigned suggested petitioner make a motion to dismiss this case. In the alternative, petitioner could file an expert report supporting her allegations.

On February 23, 2017, petitioner e-mailed an undated letter moving for dismissal. By separate filing, the undersigned filed petitioner's mother's letter by the undersigned's leave. Petitioner's mother's letter states in pertinent part:

> Ms. Davis and her family have carefully considered the information from both [her prior attorney] and Mr. Rossback [sic] that they were unable to find any physician that will state Ms. Davis' condition is connected to the receiving of the above mentioned vaccinations [human papillomavirus, hepatitis A, and Menactra].
>
> . . . At this time Ms. Davis[] is requesting the United States Court of Federal Claims to dismiss her case *without prejudice*. She is requesting this action to protect her interest in the event evidence of the association between her condition (pseudo-tumor cerebri, papilledema and on-going headaches) and the vaccines is ever found.

Unnumbered second page of e-mailed letter to the undersigned's law clerk.

Although petitioner's mother states in the same letter e-mailed February 23, 2017 that, in April 2012, petitioner's original diagnosing physician, Dr. Greg MacDonald, told her that her vaccinations caused her pseudo-tumor cerebri, the medical records do not support petitioner's mother's statement. Moreover, during the status conference held on October 19, 2016, petitioner's mother stated that petitioner's original doctor did not support petitioner's case.

Petitioner' motion to dismiss her case is hereby **GRANTED**.

2

## FACTS

### Prevaccination Records

On April 11, 2010 (two years before the vaccinations at issue), petitioner saw Dr. Lee Anna Muzquiz, Tribal Health & Human Services, complaining of intermittent headaches. She noted that they were related to her menstrual cycle. The sides of her head in which the headaches occurred were different each time. She sometimes had photophobia. Her mother had a similar history. Med. recs. Ex. 2, at 89.

### Postvaccination Records

On April 10, 2012, petitioner received HPV, hepatitis A, and Menactra vaccines. Med. recs. Ex. 1, at 1.

On April 16, 2012, petitioner saw Dr. Muzquiz, complaining of a headache for one week that began on April 11, 2012. Med. recs. Ex. 2, at 3. She had sharp pain on the side of her head, which came and went, and travelled from side to side. On the day of the visit, she felt dizzy and thought she would lose her balance four times. Noise, light, and smells exacerbated her symptoms. Her throat felt a little sore and she thought she might have an earache. Her stomach was not feeling very good. Petitioner was 5'3" and weighed 181 pounds. Her BMI was 30.35. On physical examination, her tympanic membranes were clear, and her pharynx did not have erythema. Dr. Muzquiz diagnosed petitioner with headache, and allergic rhinitis not otherwise specified. Petitioner had seasonal allergies. Id.

Also on April 16, 2012, petitioner saw Dr. Marcus Simonich, an optometrist with Ronan Optical. Med. recs. Ex. 4, at 14. Petitioner said she had migraines since April 11, 2012 mostly every day. Reading, sound, and light seemed to trigger them. Petitioner received HPV, hepatitis A, and Menactra vaccines on April 10, 2012. Petitioner's primary care physician Dr. Muzquiz did not think petitioner's vaccinations caused her headaches. Petitioner obtained new glasses two weeks prior to her vaccinations. Her visual acuity was good with her new prescription. She said she did not have headaches until the prior week. Id. Dr. Simonich diagnosed petitioner with headache, myopia, papilledema which was mild versus pseudo-papilledema, and referred her to a neurologist. Id. at 19.

On April 17, 2012, Dr. Simonich, the optometrist, telephoned petitioner's primary care physician Dr. Muzquiz and said he noted some optic edema and recommended petitioner see a neurologist to rule out pseudo-tumor cerebri. Med. recs. Ex. 2, at 5.

On April 24, 2012, petitioner saw Dr. Gregory P. MacDonald, a pediatric neurologist, complaining of headaches and papilledema. Med. recs. Ex. 5, at 3. Her headaches began April 11, 2012, the day after she received hepatitis A, meningitis, and Gardasil vaccinations. She had new glasses the week before that. Loud noises triggered her headaches. They were associated

3

with photophobia, sonophobia, dysequilibrium, increased sleeping, decreased appetite without weight loss, and increased fatigue. She did not have nausea. She missed school three days in the prior two weeks. She had seasonal allergic rhinitis. Id. at 4. Dr. MacDonald diagnosed petitioner with pseudo-tumor cerebri. Id. at 5.

On April 27, 2012, petitioner had a brain MRI done. Id. at 39. There were no masses or hydrocephalus. She did not have dural sinus thrombosis. Id.

On May 22, 2012, petitioner saw Dr. MacDonald, who noted that her brain MRI and MRV were normal. She did not have hydrocephalus, tumor, or Chiari malformation. Id. at 7. On physical examination, her fundi showed clear improvement. Her papilledema had improved but not resolved. Dr. MacDonald again diagnosed pseudo-tumor cerebri. Id. at 8.

On July 12, 2012, petitioner saw Dr. MacDonald. Id. at 10. Petitioner's daily headaches had subsided. She had increased appetite and weight gain. Both her parents were obese. Id. On physical examination, petitioner's fundi showed normal optic nerves with sharp disc margins and spontaneous venous pulses ("SVPs"). Id. at 11. Dr. MacDonald diagnosed petitioner with pseudo-tumor cerebi. He noted petitioner's daily headaches and papilledema had resolved with Diamox. Id.

On August 28, 2012, petitioner saw Dr. MacDonald. Id. at 13. Petitioner had intermittent pulsatile headaches more consistent with migraine. Id.

On March 2, 2013, petitioner saw Dr. MacDonald. Id. at 71. He wrote that her pseudo-tumor cerebri was in remission. When she had a lumbar puncture done on January 18, 2013, she had a normal opening pressure. The funduscopic eye examination done that day was normal. Petitioner had intermittent headaches once every three weeks without definite triggers. He diagnosed petitioner with migraines and advised her to maintain hydration. Id.

On April 16, 2013, petitioner saw Dr. MacDonald, who stated her pseudo-tumor cerebri was in remission with normal opening pressure on lumbar puncture. Med. recs. Ex. 3, at 45. On physical examination, she had a normal funduscopic exam. Id. He states that anxiety and mental stress seemed to trigger her headaches. She stayed up late and wanted to sleep in the morning. She had a normal examination. Id. at 46.

On October 17, 2013, petitioner saw Dr. MacDonald. Her pseudo-tumor cerebri had returned, perhaps due to a recent urinary tract infection and the antibiotic she took to treat it. Med. recs. Ex. 5, at 75. Petitioner's BMI was then almost 35 and presented serious health risks for her in addition to likely exacerbating her pseudo-tumor cerebri. Her parents were also very obese. Id. at 76. On physical examination, petitioner's fundi showed absent SVPs and grade 1 papilledema bilaterally. Id. at 78.

On December 28, 2013, petitioner saw Dr. Bruce Mikesell, complaining of headaches for the past two weeks. Med. recs. Ex. 3, at 210. She was previously diagnosed with pseudo-tumor

4

cerebri, but Dr. Mikesell wrote that her documented workup did not support this diagnosis. Id.

On April 17, 2014, petitioner saw Dr. MacDonald. Med. recs. Ex. 5, at 80. She had migraine not otherwise specified with intractable migraine, pseudo-tumor cerebi, and obesity. On physical examination, her funduscopic eye examination looked normal. Her recent lumbar puncture had an opening pressure within normal. When 5.5 mL were removed to yield a closing pressure of 19.8 cm of water, petitioner said she felt instantly better and was headache-free for four days. Id. at 81.

On September 26, 2014, petitioner saw Dr. Marcus Wheeler, who notes: "I suspect given the chronic nature of her symptoms and complaints of discomfort out of proportion to physical manifestations of discomfort that there is likely a significant psychological component to her symptoms which will need to be addressed in the future." Med. recs. Ex. 19, at 27.

## **DISCUSSION**

To satisfy her burden of proving causation in fact, petitioner must prove by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen v. Sec'y of HHS, 418 F.3d 1274, 1278 (Fed. Cir. 2005). In Althen, the Federal Circuit quoted its opinion in Grant v. Secretary of Health and Human Services, 956 F.2d 1144, 1148 (Fed. Cir. 1992):

> A persuasive medical theory is demonstrated by "proof of a logical sequence of cause of and effect showing that the vaccination was the reason for the injury [,]" the logical sequence being supported by a "reputable medical or scientific explanation[,]" i.e., "evidence in the form of scientific studies or expert medical testimony[.]"

418 F.3d at 1278.

Without more, "evidence showing an absence of other causes does not meet petitioner's affirmative duty to show actual or legal causation." Grant, 956 F.2d at 1149. Mere temporal association is not sufficient to prove causation in fact. Id. at 1148.

Petitioner must show not only that but for her human papillomavirus, hepatitis A, and Menactra vaccinations, she would not have pseudo-tumor cerebri, papilledema, and headaches, but also that these vaccinations were a substantial factor in causing pseudo-tumor cerebri, papilledema, and headaches. Shyface v. Sec'y of HHS, 165 F.3d 1344, 1352 (Fed. Cir. 1999).

The Vaccine Act, § 300aa-13(a)(1), prohibits the undersigned from ruling for petitioner based solely on her allegations unsubstantiated by medical records or medical opinion. None of petitioner's medical records supports her allegations. In fact, petitioner's personal care physician Dr. Muzquiz informed Dr. Simonich, petitioner's optometrist, that she did not think petitioner's

5

vaccinations caused her headaches. Petitioner has not filed a medical expert report in support of her allegations even though her first attorney spent over a year and a second attorney Mr. Rossbach spent months looking for an expert.

The undersigned **GRANTS** petitioner's motion to dismiss.

## CONCLUSION

This petition is **DISMISSED**. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[2]

**IT IS SO ORDERED.**

Dated: February 27, 2017

*Laura D. Millman*
Laura D. Millman
Special Master

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly filing a notice renouncing the right to seek review.